[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff (wife) and the defendant (husband) were married on September 25, 1971 in Levittown, New York. Both parties have resided in the state of Connecticut for more than one year prior to the wife filing the complaint on August 4, 1999. The plaintiff alleged in the complaint that the marriage has broken down irretrievably without any reasonable hope of reconciliation. There is one minor child issue of this marriage, a daughter, Sarah Makin (born March 13, 1983), who is now seventeen years of age. She expects to graduate from high school in June of next year and then attend a four year college. Their daughter Denna is twenty-four CT Page 15315 years of age and is married, living in Belmont, Massachusetts. Neither of the parties have been recipients of public assistance. The court has personal jurisdiction of these parties and the marriage. They proceeded to trial on October 25, 2000, and November 1, 2000, at which time both of them testified, as did other witnesses. Both parties were represented by capable counsel.
The plaintiff testified that the defendant was the primary cause for the marital breakdown in that he was never satisfied and constantly complained on how she mismanaged the marital funds. Their arguments over money increased to the point that in 1978 she and her two and one-half year old daughter Deanna left the marital home in State College, Pennsylvania, and moved to an apartment in Farmingdale, New York. In 1979, they went to marriage counseling, and after a few months, they reconciled and resumed their marriage.
The defendant testified of their irreconcilable differences over her managing family finances and her lack of respect for him as the primary causes for the breakdown of the marriage.
After considering all their testimony, the court finds that each party must accept some of the responsibility for the breakdown of this marriage. The court enters a decree of dissolution on the ground of irretrievable breakdown pursuant to § 46b-40(c)(1) of the Connecticut General Statutes and finds them equally at fault.
To understand the orders that will follow, it may be helpful to relate some of the background facts. For the past twenty-two years, the defendant has been employed as a district manager by Ecolab, Inc., of Sherman, Connecticut, selling chemicals and medical supplies to hospitals and nursing homes. During this same time, the plaintiff has worked full-time selling real estate, developing fund raising projects for elementary schools in Connecticut and New York, and also worked in personnel. In addition, she was a homemaker caring for the household responsibilities, including the raising of their two daughters. She has developed excellent business skills and currently holds a responsible full-time position in marketing for the APDC Construction Company in Southbury, Connecticut.
On his current financial affidavit, the defendant earns a net weekly income of $638, but he should add $69 per week for his 401K, giving him a net weekly income of $707. The plaintiff's net weekly income is shown on her financial affidavit to be $730.57 per week. His weekly expenses are shown to be $1,029 per week, and hers are $1,184.70. At the present time, their net weekly income and expenses are about the same, and both have been working full-time. CT Page 15316
From their federal income tax returns from 1994 through 1999 (Plaintiff's Exhibits A through F), his adjusted gross yearly income for the past six years has been about $50,000 and hers about $35,000. Their annual yearly incomes were relatively comparable, and up to 1996, they deposited all their earnings in a joint checking account out of which she paid their household bills and expenses. The court finds their annual earnings and the plaintiff's contributions as a mother and homemaker for this family were about equal during this twenty-nine year marriage. Their family living expenses about equaled their earnings. They were more successful in selling their homes in Pennsylvania and Long Island to enable them to take the equity from those sales to build a new home at 100 Grandview Road in Southbury, Connecticut in 1990-91 for a total cost of $358,173. They closed on this new home on April 10, 1991. (See Plaintiff's Exhibits R, S.) They decided to move to Southbury, believing the quality of life and the public schools were better than in Long Island. Prior to moving to Southbury, they urged the plaintiff's parents, Aniello and Olga Panetta, who are presently eighty-two and eighty years of age, to sell their home in Long Island and move in with them in a new home they were building in Southbury, Connecticut. After giving serious consideration to this invitation, the Panettas sold their home in Farmingdale, Long Island, realizing a net equity of approximately $235,000. The parties and the Panettas agreed to build a separate apartment in this home, and Mr. Panetta had an architect prepare the plans for a 1,200 square foot apartment incorporating it as part of this residence. During the construction, the Panettas rented an apartment in Southbury for about eight months and with these parties supervised the construction. The court believed Mr. Panetta's testimony that these parties told him that he and his wife could live rent free in this apartment for the rest of their lives if he paid the cost of constructing this apartment and help them finance the construction of the home. The plaintiff corroborated his testimony. Mr. Panetta introduced into evidence eight checks: six he delivered to the parties and two to their daughters, totaling $237,500 (see Plaintiff's Exhibits L, M, N, O) during the construction of this home. At the closing on April 10, 1991, the parties obtained a first mortgage from a Southbury bank for $140,000, and from these proceeds repaid Mr. Panetta approximately $122,000, leaving a balance of $115,500 as his investment. On November 15, 1994, Mr. Panetta delivered another check payable to the plaintiff for $10,000 for improvements made to a driveway (Plaintiff's Exhibit P) for a total investment of $125,500. In his testimony, Mr. Panetta agreed to accept $120,000 for his investment.
The defendant claimed he owed the Panettas nothing because they have lived in this apartment rent free for the past ten years. He also denied ever promising them a life use to this apartment. CT Page 15317
The court believed the testimony of Mr. Panetta and of his son, Robert Panetta, who acted as his financial advisor. He made out the checks signed by the father that were delivered to these parties to pay for the construction. The receipt of these checks was confirmed by the plaintiff's testimony. The plaintiff testified that she promised her parents that they could live in this apartment rent free for the rest of their lives. She testified the defendant consented to this oral agreement.
It was undisputed that these parties were able to work full-time for the past ten years that the Panettas lived with them. The plaintiff's mother, Olga Panetta, did the family laundry, did most of the cooking, ironed their clothes, cleaned the entire house, made drapes and other improvements, as well as helping them raise their two daughters. The father maintained the outside of the residence. They received no compensation for their services during the past ten years.
The funds advanced by Mr. Panetta for the construction of this residence were not gifts nor loans to the parties. The Panettas moved to Southbury relying on the representation made to them by the parties that they could live in this apartment rent free for the rest of their lives. Based on the testimony of the two appraisers, and the appraisals in evidence, (Plaintiff's Exhibit J. and Defendant's Exhibit 1), the court finds the present value of this apartment is at least $126,000.
The court believes that this marital home should be sold in between six months to a year and the net proceeds divided equally between the parties. The plaintiff shall be entitled to receive the first $120,000 from the sale proceeds for her parents' life estate claim in the apartment. The plaintiff agrees to hold the defendant harmless on her parents' life estate claim and reimburse him if he is ever held liable on this claim. By way of example, assuming the residence is sold for $500,000, the funds would be divided as follows:
 Assumed Sales Price for Marital Residence $500,000. Deductions:
1. Payment of first mortgage $ 65,000.
 2 Payment to plaintiff-life estate claim of Aniello Olga Panetta 120,000.
3. Marital debt of Diane Panetta 15,000.
4. Estimated closing costs 35,000.
CT Page 15318
$235,000 235,000.
Net Balance to be divided equally between the parties 215,000.
 The court shall retain jurisdiction of the marital home until it is sold.
It is undisputed that these parties will have been married twenty-nine years, a relatively long marriage. The wife testified to be in excellent health, and the husband is in reasonably good health. He is now fifty-three years old, and she is fifty. They are both able to work full-time. The court finds no need to award periodic alimony to either party. However, a nominal award of $1 a year is granted to both parties.
The other principal assets from the marriage are the parties' pension and retirement plans. The plaintiff lists a total value of $7,017 on her financial affidavit, and the current total value of his plans are approximately $252,952.29. (See Plaintiff's Exhibits 2, 3, 4.)
Based on the length of the marriage, and after considering all the other criteria in § 46b-81 of the Connecticut General Statutes (property division statute), § 46b-82 (the alimony statute), and all the exhibits in evidence, and the testimony of record, the court believes and finds that the marital residence and all of the pension and retirement funds are the principal marital assets. Both parties have worked equally hard over the past twenty-nine years to acquire them, and an equal division of these assets is fair and equitable.
The court has also considered the current financial affidavits, §46b-84 (the child support statute), § 46b-62 (payment of attorney's fees), as well as the case law on the issues relevant to this case, including Scherr v. Scherr, 183 Conn. 366 (1981) in arriving at the following orders:
 ORDERS 1. Marital Residence
The wife shall be allowed to reside in the marital residence at 100 Grandview Road, Southbury, Connecticut until it is sold. The wife shall pay the mortgage, taxes, insurance, and normal household expenses during her occupancy. She will list the property for sale with a multiple listing agency in Southbury or in this region on or before July 1, 2001 for $585,000, the estimated fair market value of the defendant's appraiser. She may reduce the price up to $10,000 every thirty days until CT Page 15319 the marital home is sold. From the proceeds of the sale, the plaintiff shall pay herself the $120,000 for the life estate claim of her parents, the marital debt of $15,000 owed to Diane Panetta listed on the husband's financial affidavit, the first mortgage of about $65,000, and all customary closing costs and fees, and the net proceeds divided equally between the parties.
The household furniture and furnishings now in the marital home shall be the property of the plaintiff. The personal property brought into the marriage by the defendant shall remain his property and may be retrieved within thirty days from this judgment. The personal property in the apartment shall belong to her parents, Aniello and Olga Panetta.
During the next six months, the wife shall sell the used furniture, collectibles, glass and other brick-brac valued on the defendant's affidavit at $10, 000. It is presently stored in the garages at the marital home. She may sell it to Seymour Antiques or to any other dealer willing to pay the highest price, and then divide the net proceeds equally between them, minus expenses.
2. Retirement and Deferred Compensation Plans
All of the deferred compensation and pension plans listed in both of their financial affidavits (Plaintiff's Exhibits 2, 3, 4) are valued at about $252,952.29, and the wife lists a value of $7,017 on her plan. These plans shall be divided equally between the parties. The attorney for the plaintiff may retain an actuary to prepare any necessary Qualified Domestic Relations Orders (QDRO) to effectuate these transfers. Any fee required to prepare the QDROs shall be shared equally by the parties. The court shall retain jurisdiction until said QDROs are approved by the court.
3. Custody, Child Support and Visitation
The parties shall have joint legal custody of their minor daughter, Sarah Makin, with the physical residence of the minor child to be with the plaintiff. The defendant is granted open, liberal and flexible visitation.
The defendant shall pay child support to the plaintiff of $168 per week commencing on the date of dissolution. Child support shall terminate when the minor attains the age of eighteen or graduates from high school, whichever occurs last, but not beyond the age of nineteen. The child support is in accordance with the child support guidelines.
4 Medical Insurance for the Minor Child
CT Page 15320
The defendant shall maintain medical insurance coverage through his employer for the benefit of the minor child so long as it is available. Any unreimbursed medical, dental, orthodontic, psychiatric, surgical and optical expenses shall be shared by the parties in accordance with the child support guidelines.
5. Alimony
Each party shall be awarded periodic alimony of $1 per year until the death of either party, the remarriage of the plaintiff, or statutory cohabitation by the plaintiff with an unrelated male pursuant to §46b-86 of the Connecticut General Statutes.
6. Life Insurance
The husband shall maintain his term life insurance of $100,000 naming his daughter, Sarah Makin, as primary and irrevocable beneficiary as long as he has the duty to support her.
7. Health Insurance
The wife shall have COBRA benefits to the husband's health insurance at her own expense.
8. Jewelry
The plaintiff shall retain her own jewelry except for the jewelry given to the defendant by his mother.
9. Automobiles and $9,800 Escrow
The plaintiff will keep her Toyota 4-Runner valued at $16,000.
The defendant shall be entitled to the $9,800 being held in escrow by his attorney from the sale of his 1957 truck.
10. Attorney's fees
Each party will pay their own attorney's fees.
11. Debts and Liabilities
Each party will pay their own debts whether or not they are listed on their financial affidavits. CT Page 15321
12. Automobile Negligence Claim
The plaintiff has a claim pending for damages sustained in an automobile accident which was not listed in her financial affidavit. She shall be entitled to retain the entire proceeds from such claim or verdict. The defendant shall sign whatever releases are necessary.
Petroni, J.T.R.